WILLIAM D. JOHNSON

*v.*

JOHN A. HUGHES et al.

[Filed June 28th, 1899.]

Though a court of equity will not determine a dispute concerning a purely legal title to lands, where no equitable question is connected therewith, it will restrain wanton injury to structures on the land in dispute, not adequately remediable at law, until the complainant shall, by suit at law, have his rights adjudicated.

On bill, answer and proofs.

This is a suit seeking to enjoin the defendants from interfering with certain signs which the complainant had erected on a tract of meadow land lying along the West Jersey and Seashore Railroad near Atlantic City. The signs are business advertisements, painted on a wide board surface, which is built upon posts firmly set into the ground, so that they last for years. These signs are placed near and parallel to the railroad and are rented by the complainant to advertisers for agreed periods of time and are intended to attract the attention of passengers in passing trains. The complainant claims to be the owner in fee of the land on which the signs are erected, which has been referred to in the evidence and indicated on a map (*Exhibit D 10*) as the "John T. Lake" tract. He charges that the defendants intruded on his possession and have cut down his signs and interfered

Johnson v. Hughes.

with and greatly injured his business and threatens to destroy all the rest of his signs, &c.

The defendants also claim a legal title in fee to the same lands by deeds here exhibited and insist that they and those under whom they claim have been and are in possession of the premises in dispute.

The lands consist of salt meadow, producing salt grass and sedge. They are not shown to be fenced or otherwise shut in, and the actual possession of the complainant appears to have been limited to the erection and maintenance of these signs. The alleged possession of the defendants is of a very shadowy character and was actually asserted as against the complainant only at a very recent date.

The complainant and the defendants both claim by deeds shown to hold a legal estate in fee in the lands in dispute.

*Mr. Martin V. Bergen, Jr.*, and *Mr. Martin V. Bergen*, for the complainant.

*Mr. Enoch A. Higbee*, for the defendants.

GREY, V. C.

There is no question of an equitable estate, or of fraud, or trust, or other matter of an equitable nature in this case. The title asserted on each side is the holding of a legal estate in the premises which is antagonistic to the legal estate claimed to be held by the other.

No recovery or judgment of any kind establishing the right of either party to the lands in question is exhibited.

Under this showing there is presented as to the ownership of the lands a question of dispute as to the holding of a purely legal estate disassociated from any element of equity jurisdiction. That questions as to the legal title to lands must in such case be determined in a court of law, is the settled rule. *Hart* v. *Leonard, 15 Stew. Eq. 416.* A court of equity will not determine disputes as to legal titles in such cases. *Fahy* v. *Fahy, 42 Atl. Rep. 726; Torrey* v. *Torrey, 10 Dick. Ch. Rep. 410.*

The complainant appears to have had his signs erected on the premises for some years before the defendants began to destroy them. He claims that he is entitled to a restraint against such action, because, if his signs are cut down as is threatened, his business will be destroyed and he will suffer irreparable injury, for which he can obtain no adequate remedy at law, and that on this ground he is entitled to the protection of this court, irrespective of the fact that there is a denial of his title to the lands in question, and that he has not as yet established his right, and that this court will not decide a dispute as to the legal title to lands in such cases.

Under the earlier practice, both in England and in this country, equity refused to restrain trespasses to land, and left the party to his legal remedy. As late as the time of Lord Thurlow injunctions were refused in such cases. Even quite recently courts of equity have refused relief in such cases. But the evident injustice of permitting the actual destruction of the subject-matter in dispute during the delay necessarily incident to the establishment by judicial determination of the rights of the parties, led the equity courts to interfere, not to decide the dispute as to the legal title, but to save the property from destruction until the law courts should, by a proper proceeding, adjudge the rights of the parties.

In the *Flamang Case*, cited in *Hanson* v. *Gardiner, 7 Ves. 304,* Lord Thurlow, in order to prevent irreparable mischief, allowed an injunction, though the right of the complainant was not established, and in the *Hanson Case* Lord Eldon followed that authority. The jurisdiction assumed by the courts of equity in such cases is not for the determination of the controversy as to the title, but simply for the preservation of the subject-matter in dispute from destruction; and, in the English practice, the complainant who claims the intervention of this court is put under terms that he shall, within a proper time, bring such suit in the law courts as may be necessary to establish his rights. *Harmon* v. *Jones, 1 Craig & P. 299.* In *Coffin* v. *Loper, 10 C. E. Gr. 443,* an injunction was allowed to stay waste in a partition suit requiring the complainant to establish his title

Johnson *v.* Hughes.

without unnecessary delay, and that case was followed in *Weise* v. *Welsh, 3 Stew. Eq. 434.*

In the case in hand an injunction is sought to restrain the defendants from the destruction by them of the signs put up on the property in dispute by the complainant, and there maintained by him for a long time before any controversy had arisen. In, the signs themselves as structures the defendants claim no right or interest.

A part of the destruction (which appears, so far as the articles in question are useful for signs, to be absolute) the defendants admit was done by their acts. Another portion of the destruction, while neither proven nor admitted to have been done by the defendants, yet does appear to have been done in accordance with their claim of right and to have effectually ruined several of the structures used as signs. The character of the injury was plainly and finally destructive of the usefulness of the thing sought to be protected. When the signs were either painted out or cut down they were absolutely useless for any purpose of value to the complainant. The act of destruction was not only a final ending of the business of the complainant to the extent that it was carried on by the exhibition of these signs, but the complainant is hereby made liable to a multiplicity of lawsuits by those who have paid him for advertising by means of the signs.

The defendants do not deny the destruction of some of the signs since this suit has been pending, and they assert their right to destroy them all, and while not confessedly declaring that to be their intention, they do not deny that purpose, and it is reasonable to believe that, having destroyed some and asserting a right to destroy all, that assertion of right may in the future be carried into effect by the actual destruction of the residue of the signs which still remain on this property.

An injury of the character threatened, which will deprive the complainant of the business in which he has for years been engaged, and subject him to many suits by advertisers whose money he has received in payment for the continuous display of the signs, is not capable of adequate redress by action at law,

for the reason that the extent of the damages which it will inflict on the complainant cannot be presented to a jury.

To restrain a destruction of such a character is within the practice of this court, in the exercise of its general equitable powers. *Cornelius* v. *Post, 1 Stock. 196; Bank of Chenango* v. *Cox, 11 C. E. Gr. 452; Hart* v. *Leonard, 15 Stew. Eq. 416,* under paragraphs 5 and 6, as to injunction to stay waste and to prevent irreparable injury, &c., and cases there cited.

An injunction to stop such threatened destruction of or interference with these structures until the complainant shall have had time and opportunity to establish by a suit at law the legal title which he claims he owns in these lands, is not, in my view, either an intrusion upon the province of the law courts or an unreasonable hardship to the defendants.

The propriety and necessity of establishing a legal title in the law courts is not only recognized, but by the terms here imposed, on granting the injunction, that course may be compelled. The defendants are thus deprived of no other enjoyment of the lands in dispute than the opportunity for the wanton destruction of the structures erected thereon, a privilege the exercise of which, while of the greatest possible injury to the complainant, resulting, if carried into effect, in the substantial destruction of his business, is of no advantage whatever to the defendants.

The complainant insists that it should be the defendants and not the complainant who should be required to bring the suit at law to establish title. This would be true if this were a bill filed in accordance with the statutory requirements of the act regarding bills to quiet title. But this is not a suit to quiet title, in which an issue might be framed and the defendants be required to bring an ejectment. The bill does not set up the statutory incidents of such a suit. The complainant alleges that he had title and possession, and the defendants deny it and assert they own. The court intervenes only to prevent destruction, while the complainant may make good in the law courts his allegation of title.

There should, however, be no more interference with the possible legal rights of the defendants than may be necessary to

protect the property of the complainant from the threatened destruction, and the restraint should be upon terms that the complainant shall within a reasonable time begin and prosecute with diligence against the defendants a suit at law, to define and enforce his title to the lands in question, as was done in the case of *Harmon* v. *Jones* and *Coffin* v. *Loper, ubi supra.* I will advise that an injunction be issued upon the terms named.